### BRYANT *v.* THE STATE, 1 Howard, 351.

#### PRACTICING MEDICINE WITHOUT A LICENSE.

By the constitution of 1833, the terms of all officers were limited, respectively, to some specified time ; and consequently abrogated the law providing for the appointment of a board of medical censors, whose term of office was unlimited.   Consequently, an indictment for practicing medicine without a license from said board, cannot now be maintained.

Error to Wilkinson circuit court.

This was an indictment in Wilkinson county, against Bryant, for practicing medicine without a license from the board of medical censors, and came up to this court on writ of error.   To

the indictment, the defendant below made plea of confession
and evidence, viz., that he did practice medicine by administer-
ing to divers sick persons, at the times charged in the indict-
ment; but that said medicines, and the administration of them
were the same, and none other than is authorized by patent
rights of Samuel Thompson and his assigns, and by the said
Thompson and his assigns, and by the said Thompson permitted
to be used and administered by the defendant. To which plea
there was a demurrer, which was sustained by the court.

*Henderson* for plaintiff in error.

The defendant had full and ample authority to compound and
administer the medicines, as by his plea alleged, and that the
law of the state, on which his conviction is based, and his pun-
ishment demanded, was as to him and his acts confessed, *null
and void.*   2 Peters' Reports, 251–2; 2 Wheaton, 405–6; ib.
421–5; ib. 431–2.

This charge was preferred against defendant at the April term,
1833, and since the new constitution has repealed the repug-
nant statute in the Revised Code.   There was, therefore, no
such offense known to the law, as is charged in the indictment,
and hence, the judgment below should be reversed and given for
the defendant.   2 Peters' R., 251–2; Rev. Code, p. 416, sec.
2, 5; Statute of 1827, 25, 26, 27; New Const., p. 6, sec. 30; p.
26, sec. 4; Const. U. S. Rev. Code, p. 492–3, art. 1, sec. 8, par.
8; p. 498, art. 6, par. 2; Gordon's Dig. p. 547, secs. 2811, 2816,
2820, 2825.

*T. F. Collins,* attorney general.

SHARKEY, C. J.:

Bryant, the plaintiff in error, was indicted in the circuit court
of Wilkinson county at the November term, 1833, for practicing
medicine without a license.

To the indictment, he pleaded that he was authorized so to
practice by virtue of a patent issued by the proper department
of the Federal government, to one Samuel Thompson, under
whom, the plaintiff claims by transfer, or as having a special
authority to use the invention.   The privilege secured to the

patentee and his assigns, is that of using, compounding, mixing, preparing and administering certain medicines according to the schedule attached to the patent, which is commonly denominated the "Thompsonian System." There was a demurrer to the plea, and various causes assigned, which was sustained by the circuit court.

We are precluded from any inquiry as to the merits of the plea, by an interposing question which goes directly to the foundation of the indictment, and that is, was the act stated as the offense, a violation of an existing law of the state? The act of 1819, incorporated into the revised code, 416, provided for the appointment of a board of medical censors, who were authorized and required to decide on the qualifications of applicants, for license to practice medicine, and to grant such license to those who might be qualified. The first act was found to be imperfect, and several amendments were subsequently passed, by which it was made an indictable offense, subjecting the offender to heavy penalties, to practice medicine without a license. Under these provisions, the plaintiff in error was indicted, at a period subsequent to the adoption of the revised constitution; we must necessarily determine how far these several laws are in confliction with the constitution, and consequently inoperative. There is but one feature in the law, that tends to place it in conflict with the paramount authority of the revised constitution, and that arises from the tenure of office conferred on the members of the board. They went into office by appointment by the governor, and were to hold during good behavior, and had power to fill vacancies. The mode of appointment, and their holding during good behavior, and the object of the appointment being to carry into effect a general law of the state, go very far to show that they must be considered as officers. They were doubtless subject to impeachment for malconduct in office, because they hold their office during good behavior, which necessarily implies that a power of inquiry into their conduct was reserved to the authorities of the state. If we consider them as officers, the provisions of the constitution must bear on them. The first provision which must be considered relates to the term of office, and is contained in the 30th section of the Bill of

Rights. It declares "that no person shall be appointed or elected to office in this state for life, or during good behavior, but the tenure of all offices shall be for some limited time." This section may be considered as more properly relating to officers, thereafter to be appointed or elected, but it very clearly shows the spirit of the constitution to an unlimited tenure of office, and must have its due weight in the investigation of a constitutional question. The fourth section of the schedule shows conclusively, that the convention did not intend to permit any law which was repugnant to the constitution, to remain in force, and for that reason, particular care was taken to perpetuate all laws that were not repugnant, leaving no other conclusion, than that they intended to abolish all that were of a different character. The provisions of this law are manifestly in opposition to the spirit as well as the declared provisions in the constitution, and must be considered as void.

It is true the third section of the schedule provides that officers then in office should remain in until their successors should be qualified; but neither the convention nor the legislature contemplated the continuance of the board by making provisions to fill the offices of the members. We cannot, therefore, consider it, as the legislature may by possibility continue it, but must look at it as it is, and contrast it with the constitution. The several amendments must be taken as a part of the general law, and must altogether depend for their validity on the powers of the board, for the provisions of the law are nugatory without the essential officers, who alone are authorized to perform the duties required. A law containing the same provisions in regard to the particular officers necessary to the enforcement of it could not now be constitutionally passed by the legislature; and by parity of reasoning, I do not think it can constitutionally exist in the face of the fourth section of the schedule by having been in operation at the adoption of the constitution. The act charged in the indictment was, therefore, no violation of law, and the judgment must be reversed.